UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

SHARON PROUTY,                    )
   Plaintiff                  )
                                  )
                                  )
             v.              ) C.A. NO. 12-cv-12097-MAP
                                  )
THE HARTFORD LIFE AND              )
ACCIDENT INSURANCE CO.;            )
and C & S WHOLESALE               )
GROCERS INC.                       )
   Defendants                 )

MEMORANDUM AND ORDER REGARDING
DEFENDANTS' MOTIONS TO DISMISS
(Dkt. No. 25 & 35)

February 12, 2014

PONSOR, U.S.D.J.

## I.  INTRODUCTION

Plaintiff, Sharon Prouty, brought this ERISA action against her deceased husband's former employer, Defendant C&S Wholesale Grocers, Inc. ("C&S"), and the issuer of a group life insurance policy, Defendant Hartford Life and Accident Insurance Co. ("Hartford Life").  Plaintiff alleges that Defendants violated their fiduciary duty under ERISA to provide an adequate plan description or provide notice of her husband's right to convert his group life insurance policy to an individual policy.  Plaintiff asks the court to

award her "appropriate equitable relief," pursuant to 29
U.S.C. § 1132(a)(3).  Defendants have moved to dismiss
Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6)
for failure to state a claim.  For the reasons stated below,
the court will grant both Defendants' motions.

## II.  <u>FACTS</u>[1]

Plaintiff was married to David Prouty, who had been
employed by C&S for roughly nine years before being laid off
in February 2008.  During his employment with C&S, Mr.
Prouty participated in a group life insurance policy issued
and administered by Defendant Hartford Life.  Defendant C&S
served as the Plan Administrator and sponsor of the
insurance policy.  At the commencement of Mr. Prouty's
employment, C&S provided him with a summary plan description
("SPD").  (Group Benefit Plan (hereinafter "GBP"), Dkt. No.
25, Ex. 4.)

Under the terms of this policy,[2] Mr. Prouty ceased to

_____

[1]  The facts are drawn from Plaintiff's complaint and
are presented in the light most favorable to her.  <u>See</u>
<u>Newman v. Krintzman</u>, 723 F.3d 308 (1st Cir. 2013).

[2]  Plaintiff asserts that the SPD for the C&S plan has
not been appropriately authenticated and, therefore, the
court cannot rely on it for purposes of resolving the motion

be covered under the terms of the group health insurance
policy on "the date [his] Employer terminates [his]
employment; or [] the date [Mr. Prouty] [was] absent from
work as an Active Full-time Employee." (Id. at 31.)  The
plan also notified covered individuals of their conversion
privilege: "If insurance, or any portion thereof,
terminates, then any individual covered under the Policy may
convert his life insurance to a conversion policy . . . ."
(Id. at 34.)  To take advantage of this privilege, "the
individual must, within 31 days of the date group coverage
terminates, make written application to [Hartford Life] and
pay the premium required for his age and class of risk."
(Id. at 35.)

Plaintiff alleges that, after her husband was laid off,
neither Defendant C&S nor Defendant Hartford Life informed
her husband of the conversion privilege.  Had Mr. Prouty
been so informed, according to Plaintiff, he would have
opted to exercise that privilege.  (Am. Compl. ¶ 8, Dkt. No.
11.)  Because Mr. Prouty did not present Defendant Hartford
Life with a written application and pay the premium,

to dismiss.  This argument will be discussed herein.

however, thirty-two days after Mr. Prouty's termination in
February 2008, his group insurance coverage lapsed.
Plaintiff claims that her husband and she were not aware
that the coverage would lapse at that time.

Mr. Prouty died on June 28, 2010.  On June 14, 2012,
Plaintiff filed a claim for benefits under the group life
insurance policy with Defendant Hartford Life, which denied
coverage on August 6, 2012.  Plaintiff submitted an
administrative appeal on August 20, 2012, which Hartford
Life denied on October 16, 2012.

Plaintiff's Amended Complaint,[3] (Dkt. No. 11), asserts
two ERISA claims, one against each Defendant.  Each count
against Defendants alleges that they failed to give
Plaintiff and her husband proper notice with respect to the
life insurance termination and failed to provide a SPD that

_____

    [3]  Shortly before Plaintiff heard back from Hartford
Life about her appeal, she filed suit against Defendants in
state court claiming a violation of Mass. Gen. Laws ch. 93A.
Defendant Hartford Life removed the case to this court on
November 9, 2012, and filed its first motion to dismiss
arguing that Plaintiff's claims were preempted by ERISA.
(Dkt. No. 6.)  In response to Defendants' removal and the
motion to dismiss, Plaintiff filed an amended complaint
containing two ERISA claims, one against each Defendant. The
court denied as moot Defendant Hartford Life's initial
motion to dismiss on September 25, 2013. (Dkt. No. 63.)

4

contained an adequate, reasonable, or understandable explanation of Mr. Prouty's conversion right.  Plaintiff seeks "appropriate equitable relief" pursuant to 29 U.S.C. § 1132(a)(3).  Defendants moved to dismiss.

On June 26, 2013, a hearing was held on Defendants' motions.  At that time, Plaintiff insisted that it was unclear which document Plaintiff and Mr. Prouty received when he started his job and asked the court to order limited discovery on this question.  The court granted Plaintiff's request and set a deadline of August 30, 2013, for supplemental briefing.  (Dkt. No. 50.)

### III.  <u>DISCUSSION</u>

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009), <u>quoting</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007); Fed. R. Civ. P. 12(b)(6).  While the court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of a plaintiff, "[t]hreadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice" to state a plausible claim for relief.  Id.  Furthermore, even accepting a complaint's factual allegations, together they must establish, directly or by reasonable inference, each element required to support recovery under some actionable legal theory.  Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005).  The court must dismiss the complaint if the factual allegations are insufficient "to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.

Plaintiff contends that Defendants' conduct violated the ERISA requirement that plan administrators furnish to each plan participant a SPD that complies with certain strictures outlined in the statute.  See ERISA §§ 102 & 104, 29 U.S.C. §§ 1022(a) & 1024(b).  Therefore, according to Plaintiff, she is entitled to relief under ERISA § 502(a)(3).  29 U.S.C. § 1132(a)(3).  This section allows a participant, beneficiary, or fiduciary to file a civil action "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan" or "to obtain other appropriate equitable relief (I) to redress

such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."   ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

Defendants advance two arguments supporting dismissal. First, they argue that Plaintiff fails to allege facts sufficient to support a claim under ERISA §§ 102 and 104, 29 U.S.C. §§ 1022(a) & 1024(b), that Defendants breached any fiduciary duty imposed by the statute.  Second, Defendants argue that Plaintiff's complaint fails to identify any relief that the court may grant pursuant to ERISA § 502(a). 29 U.S.C. § 1132(a).  In support of their arguments, Defendants rely on the SPD of the plan that is the basis for this lawsuit.

Before turning to Defendants' arguments, the court will first address Plaintiff's primary defense: that the SPD produced by Defendants cannot properly be considered in support of Defendants' motion to dismiss.

A.   <u>The SPD</u>

Generally for purposes of a motion to dismiss, the court is limited to considering only those facts alleged in the complaint: "[o]rdinarily . . . any consideration of

7

documents not attached to the complaint, or not expressly incorporated therein, is forbidden, unless the proceeding is properly converted into one for summary judgment under Rule 56." <u>Watterson v. Page</u>, 987 F.2d 1, 3 (1st Cir. 1993). The First Circuit does provide narrow exceptions to this general rule "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." <u>Id.</u>; <u>Freeman v. Town of Hudson</u>, 714 F.3d 29, 35-6 (1st Cir. 2013).

Plaintiff argues that the documents submitted by Defendants were not properly authenticated as true copies of the SPD. Specifically, Plaintiff calls attention to the different distribution dates on the SPD copies submitted by each Defendant: Hartford Life's copy lists a distribution date of March 2006 (Dkt. No. 25, Ex. 4), whereas C&S's copy, produced pursuant to the limited discovery authorized by the court, lists a distribution date of December 2005 (Dkt. No. 53, Ex. 3). Plaintiff asserts that the court cannot properly consider either document for purposes of this motion.

Defendants counter that the SPD in question has been properly authenticated by Judith Rose, the Appeal Specialist employed by Defendant Hartford Life who reviewed Plaintiff's claim.  Ms. Rose averred that she was personally involved in the appeal and that this was one of the documents reviewed in determining benefit eligibility.  (Decl. of Judith Rose, Dkt. 25, Ex. 2.)  Despite the varying distribution dates, even Plaintiff concedes that the applicable provisions are the same in both SPDs produced by Defendants. (Pl.'s Supp. Mem. at 2, Dkt. No. 53.)

Defendants also note that Plaintiff does not identify any other documents that would support her claim.  Plaintiff alleges in her complaint that the SPD failed to "contain[] an adequate explanation of [Mr. Prouty's] rights or a provision stated in terms that would have explained how he could have maintained life insurance coverage after his employment terminated."  (Compl. ¶¶ 15 & 19, Dkt. No. 11.)

The SPD produced by Defendants has sufficient indicia of authenticity to permit its consideration in connection with these motions to dismiss.  Furthermore, the SPD falls squarely into two other exceptions to the prohibition

9

against considering extrinsic documents at the motion to
dismiss stage: it is central to Plaintiff's claim and is
sufficiently referred to in Plaintiff's complaint.  <u>Schaefer</u>
<u>v. Indymac Mortg. Servs.</u>, 731 F.3d 98, 100 n.1 (1st Cir.
2013).

Furthermore, Defendants correctly point to the absence
of any other possible document produced by Plaintiff that
could have served as a summary of the plan.  Where Plaintiff
has not produced the document forming the basis of her
lawsuit, it would be both unfair and improper to prevent
Defendants from referencing that document in their motions
to dismiss.  <u>See</u> <u>Blay v. Zipcar, Inc.</u>, 716 F. Supp. 2d 115,
118-19 (D. Mass. 2010) (considering extrinsic membership
agreement and stating that "Blay should not be allowed to
make various characterizations about Zipcar's policies
central to his complaint and simultaneously strike Zipcar's
attempt to point out any misrepresentations therein").
Accordingly, the court will consider, for purposes of the
motions to dismiss, the SPD submitted by Defendants.

B. <u>ERISA §§ 102 & 104, 29 U.S.C. §§ 1022(a) & 1024(b)</u>

Plaintiff alleges that both Defendants (1) violated

10

their fiduciary duties to provide plan participants and
beneficiaries with a SPD, containing information mandated in
ERISA § 104(b), that is "written in a manner calculated to
be understood by the average plan participant," ERISA § 102,
and (2) failed to inform Plaintiff and her husband of their
privilege to convert the life insurance policy.

Defendant Hartford Life argues that it has no fiduciary
duty to draft the content or ensure the distribution of the
summary plan description, since these are functions that
Congress placed with the Plan Administrator.  ERISA §§ 102 &
104, 29 U.S.C. §§ 1022(a) & 1024(b).  See Lee v. Burkhart,
991 F.2d 1004, 1010 (2d Cir. 1993) (stating that the
obligation to furnish certain plan information is "placed on
the person designated under ERISA as the 'administrator' of
the plan, not on every fiduciary"); Kenna v. Hartford Life &
Acc. Ins. Co., 2005 WL 2175158, at *16 (D.N.H. Sept. 6,
2005) (ruling that, as Hartford Life was not the plan
administrator, it did not have any obligation to provide the
plaintiff with a copy of the SPD).

Plaintiff argues that, at the very least, Defendant
Hartford Life had a duty to provide understandable

information about the rights and responsibilities under the
plan because they interpreted the terms of the policy.
However, she cites no statutory authority for this
obligation, nor any case law so finding.  The unambiguous
language of the statute places the responsibility for
provision of SPDs on plan administrators and not insurers.
Kenna, 2005 WL 2175158, at *16; see Krauss v. Oxford Health
Plans, Inc., 517 F.3d 614, 631 (2d Cir. 2008) (holding that
insurer was not the plan administrator and thus was not
liable under ERISA § 502(c) for failing to disclose certain
information).  As Defendant Hartford Life did not owe a duty
to Plaintiff to provide the SPD, neither did it owe any duty
to ensure that the document was understandable.

Defendant C&S, on the other hand, does not deny that it
has a duty to furnish a plan participant with an SPD.
However, Defendant C&S contends that the SPD given to Mr.
Prouty met the ERISA requirements.[4]  ERISA § 102(a) mandates
that the SPD of any employee benefit plan be furnished to
participants and beneficiaries with information "written in

---

[4]  Defendant Hartford Life argues this same point in
the alternative, should the court not find that it owed no
duty to provide a SPD.

a manner calculated to be understood by the average plan
participant" and that it be "sufficiently accurate and
comprehensive to reasonably apprise such participants and
beneficiaries of their rights and obligations under the
plan."  29 U.S.C. § 1022(a).  The statute also requires
certain information to be included in the SPD, including
"the plan's requirements respecting eligibility for
participation and benefits" and "circumstances which may
result in disqualification, ineligibility, or denial or loss
of benefits."  ERISA § 102(a), 29 U.S.C. § 1022(b).
Notably, the statute does not require that the SPD include
notification to participants and beneficiaries of any
conversion rights for life insurance policies.  Compare 29
U.S.C. § 1022(b), with 29 U.S.C. §§ 1161 & 1166 (requiring
written notice to employees of COBRA right to continue
health coverage by converting from group to individual
policy).

Defendants point to the policy documents themselves.
These documents contain sections on termination as required
under the statute, as well as a discussion of conversion.
This provision appears directly under exceptions to

termination and provides: "If insurance . . . terminates, then any individual covered under the Policy may convert his life insurance to a conversion policy without providing Evidence of Good Health."  (GBP 34, Dkt. No. 25, Ex. 4.)

Plaintiff concedes that the document accurately describes the effect of termination and the exceptions to the provision.  Her only complaint appears to be that, though the SPD describes the ability of a participant to convert a terminated group insurance policy into an individual policy, this descriptive passage is two pages into the document.  Plaintiff argues that plan participants would not know to look for that information so far into the SPD, nor would he or she understand that "conversion" referred to the ability to change a group policy into an individual life insurance policy.

Unfortunately for Plaintiff, the provisions in the SPD about the conversion privilege are indisputably written in a user-friendly manner with clear language.  Even if this were not true, Plaintiff cannot establish that Defendants committed any violation of their ERISA duties with respect to the SPD.  The statute simply does not require that the

14

SPD even include notification to participants and
beneficiaries of any conversion rights.  <u>See</u> ERISA § 102(b),
29 U.S.C. § 1022(b).  The SPD at issue here, in fact, goes
beyond the requirements of the statute to provide this type
of notification.

Other courts who have addressed the issue of whether
Plan Administrators and insurers are required to provide
plan participants with post-termination notice of life
insurance conversion rights have found no such requirement.
<u>Walker v. Fed. Express Corp.</u>, 492 Fed. App'x 559, 565 (6th
Cir. 2012) (noting that "ERISA does not contain any
provision that requires a plan administrator to provide
notice to plan participants other than a summary plan
description and information of the benefits plan as
discussed under 28 U.S.C. §§ 1021(a)(1) and 1022," which do
not include life insurance conversion rights); <u>Howard v.
Gleason Corp.</u>, 901 F.2d 1154, 1161 (2d Cir. 1990) (stating
that ERISA does not mandate notice of life insurance
conversion privileges); <u>Weeks v. W. Auto Supply Co.</u>, 2003 WL
21510822, at *5 (W.D. Va. June 25, 2003) (post-termination
notice requirements under ERISA apply to a group health

plan, but not to a life insurance plan).

Thus, the court concludes both that Defendant Hartford Life had no duty to provide an SPD to Plaintiff and her husband and, in any event, the SPD furnished to them by Defendant C&S did not violate ERISA as there is no requirement under the statute to provide notice of conversion rights for life insurance policies.

C.   Equitable Remedies Available

Defendants further argue that Plaintiff is not entitled to sue "under the terms of the plan" because Plaintiff is not currently a beneficiary to "any provision of . . . the terms of the plan."  ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).  Defendants point to a First Circuit case, Todisco v. Verizon Commc'ns, Inc., 497 F.3d 95 (1st Cir. 2007), where a beneficiary of a life insurance policy attempted to sue under a slightly different provision which allowed a beneficiary to bring a civil action "to recover benefits due . . . under the terms of his plan."  29 U.S.C. § 1132(a)(1)(B).  The beneficiary's husband had not been eligible for the plan because his company had incorrectly told him that he did not have to submit a statement of

16

health.  The court held that the beneficiary's claim for benefits was "plainly not a suit for benefits under the terms of the plan.  Instead, she expressly seeks benefits not authorized by the plan's terms."  Todisco, 497 F.3d at 101 (emphasis in original).

Defendant argues that this logic should be applied to the provision under which Plaintiff seeks to bring this action.  Plaintiff cannot seek to enjoin or obtain equitable relief "under the terms of the plan" when Plaintiff is not a beneficiary under any term of the plan.

Plaintiff points to a recent Supreme Court decision, Cigna Corp. v. Amara, 131 S. Ct. 1866 (2011), to support her right to bring suit under § 502(a)(3), 29 U.S.C. § 1132(a)(1)(B).  In that case, the court held that "a suit by a beneficiary against a plan fiduciary . . . about the terms of a plan" was an appropriate suit in equity.  Amara, 131 S. Ct. at 1879.  While Plaintiff is correct that this provision allows a suit to reform the terms of the plan to remedy false or misleading information, the Supreme Court did not deal with a case brought by someone who was not currently a beneficiary under a plan.

17

Plaintiff argues that she seeks equitable relief -- the conversion of the terminated plan into an individual coverage plan that will pay her appropriate death benefits. Plaintiff contends that the court should order this revision of the policy because the information about conversion was provided several pages after the information about termination in the Plan Documents.  In <u>Amara</u>, the court noted that equitable relief was appropriate when Plaintiff was denied something owed to them by the change in terms. 131 S. Ct. at 1879-80.  Here, however, there is no allegation of a change in terms that resulted in unjust enrichment.  No allegations in the complaint suggest, for example, that Mr. Prouty continued to pay premiums after his plan was terminated.  In sum, the complaint articulates no equitable grounds to bring this suit.  Simply because Plaintiff believes that provisions for termination, conversion, and notice are unfair does not make the case equitable.

## IV.  <u>CONCLUSION</u>

Undeniably, one of ERISA's central goals is to enable plan beneficiaries to learn their rights and obligations

18

under the plan at any time.  Curtiss-Wright Corp. v.
Schoonejongen, 514 U.S. 73, 83 (1995).  The statute puts in
place "an elaborate scheme . . . for enabling beneficiaries
to learn their rights and obligations at any time, a scheme
that is built around reliance on the face of written plan
documents."  Id.  However, the undisputed facts of record
confirm that Defendants provided Plaintiff's husband with
adequate documents to meet the statutory requirements.  When
the plain language of the SPD meets the requirements of
ERISA § 102, 29 U.S.C. § 1022, and there is no obligation to
provide post-termination notice of conversion rights,
plaintiff cannot recover for a breach of fiduciary duty.
Howard, 901 F.2d at 1161.

        For the foregoing reasons, Defendants' Motions to
Dismiss (Dkt. Nos. 25 & 35) are hereby ALLOWED.  The clerk
will enter judgment for Defendants, and the case may now be
closed.

        It is So Ordered.

                                 /s/ Michael A. Ponsor
                                MICHAEL A. PONSOR
                                U. S. District Judge